# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EBISAEL RIVERA GUADALUPE,

    Plaintiff,

    v.

ANDREW SAUL,[1]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO. 3:19-cv-01140

(SAPORITO, M.J.)

## MEMORANDUM

This is an action brought under 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Ebisael Rivera Rivera's claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

of Civil Procedure.  (Doc. 12). For the reasons stated herein, we will AFFIRM the decision of the Commissioner.

## I.    *Background and Procedural History*

Rivera is  an adult individual born on January 26, 1983, who was thirty-three years old at the time of his alleged onset date of disability—February 9, 2016. (Tr. 19, 59).  Rivera's age at the onset date makes him a "younger person" under the Social Security Act.  See 20 C.F.R. § 404.1563(c).  Rivera graduated from high school in 2001 and has no specialized vocational training.  (Tr. 157).  Prior to his alleged onset date, Rivera was with the United States Marine Corps from 2001 through 2005, and was a grocery store associate from 2005 through 2013.  (Tr. 157).  On January 2, 2015, Rivera protectively filed an application for benefits under Title II of the Social Security Act, alleging disability as of February 9, 2016. (Tr. 19).  In his application, Rivera alleged that the following impairments prevent him from engaging in any work: back pain, bilateral knee pain, right hand pain, and sleep apnea. (Tr. 59, 156).

Rivera's claim was initially denied on January 3, 2017. (Tr. 74). On February 27, 2017, Rivera filed a timely request for an administrative hearing that was subsequently granted. (Tr. 19, 79). Rivera appeared and

testified before Administrative Law Judge ("ALJ") Randy Riley on April 17, 2018, in Harrisburg, Pennsylvania. (Tr. 19, 36-57). Impartial vocational expert, ("VE") Michael J. Kibler also testified at the hearing. (Tr. 36-57). Rivera was represented at the hearing by counsel, Adam Crosier.

In a written decision dated July 30, 2018, the ALJ denied Rivera's application for benefits. (Tr. 19-30). Rivera appealed the ALJ's decision to the Appeals Council on November 7, 2018, but the Appeals Council denied Rivera's request for review on May 14, 2019. (Tr. 1-6). This makes the ALJ's July 30, 2018, decision the final decision subject to judicial review by this Court.

Rivera filed a timely complaint in this Court on July 3, 2019. (Doc. 1). In his complaint, Rivera asserts that the final decision of the Commissioner denying his benefits is not supported by substantial evidence and is not based on a correct application of the law. (Doc. 1, at 3). On September 10, 2019, the Commissioner filed an answer to Rivera's complaint. (Doc. 8).  In his answer, the Commissioner maintained that the decision denying Rivera's application for benefits is correct, is made in accordance with the law and regulations, and is supported by

substantial evidence. (Doc. 8, at 4-5). This matter has been fully briefed by the parties and is ripe for decision. (Docs. 13, 16, 17).

## II. *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence

does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2).

### III.  *The ALJ 's Decision*

In his July 30, 2018, decision denying Rivera's claim, the ALJ evaluated Rivera's application for benefits at each step of the sequential process. At step one, the ALJ found that Rivera did not engage in substantial gainful activity since February 9, 2016. (Tr. 21). At step two, the ALJ found the following impairments were medically determinable and severe during the relevant period: obesity, tenosynovitis of the right hand and wrist, degenerative disc disease of the lumbar spine, and chondromalacia patellae. (Tr. 21). At step three, the ALJ found that Rivera did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 23).

Between steps three and four, the ALJ assessed Rivera's RFC. After evaluating the relevant evidence of record, the ALJ found that Rivera had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except for the following:

> [H]e can never climb ladders or kneel; but can occasionally perform right fine manipulation.  He is limited to jobs that can be performed while using a cane to ambulate.

(Tr. 24).

The ALJ's conclusions at steps four and five of the sequential evaluation process were based on this RFC assessment and testimony by the vocational expert. At step four, the ALJ found that Rivera was unable to perform his past relevant work in a composite job as a store laborer, delivery route driver; martial arts instructor; and as marksmanship instructor. Rivera's RFC is limited to light work, his past work is classified as medium exertional level jobs, therefore his past relevant work would exceed his RFC capacity. (Tr. 28-29).

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Rossi*, 602 F.2d at 57.

A step five, the ALJ found that according to the testimony given by a vocational expert, a significant number of jobs exist in the national

economy for an individual of Rivera's age, education, work experience, and RFC as determined by the ALJ. These jobs include: conveyor line bakery worker, DOT No. 524.687-022, with 40,000 positions nationally; surveillance system monitor, DOT No. 379.367-010, with 109,000 positions nationally, and call out operator, DOT No. 237.367-014, with 114,000 positions nationally.  (Tr. 30, 52-53).  Having found a significant number of jobs to which Rivera was capable of making a successful adjustment, the ALJ concluded that Rivera was therefore not disabled. (Tr. 29-30).

## IV.  Discussion

Rivera contends that substantial evidence does not support the ALJ's evaluation of the opinion of Rivera's treating physician, Dr. Long, and that the ALJ's multiple errors with symptom evaluation compel reversal.

### a. The ALJ afforded appropriate weight to treating physician Dr. Long's opinion.

Rivera asserts that the ALJ erred in assigning only partial weight to the opinion of Rivera's treating physician, Dr. Long, and that the assignment of "partial weight" by the ALJ is not supported by substantial evidence. (Doc. 13, at 6).

The opinion of a treating source is afforded controlling weight when it is well-supported by objective medical evidence that is consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527; *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). ALJs have the sole authority to assign weight to medical opinions entered into the record. *See Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (discussing how "the ALJ is free to accept some medical evidence and reject other evidence, provided that [the ALJ] provides an explanation for discrediting the rejected evidence"). It is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The purpose of this is to allow for meaningful judicial review. *Burnett v. Comm'r Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

Rivera's claim of error with regard to Dr. Long's medical opinion is focused on the checklist of factors provided in 20 C.F.R. § 404.1527(c),[6] regulations of treating physicians.  For support, Rivera pointed to the longitudinal relationship he has had with Dr. Long.  Rivera has been a

---

[6] 20 C.F.R. § 404.1527(c)(2) ("Generally we give more weight to medical opinions from your treating sources…. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

patient of Dr. Long since September 2012. (Tr. 478).

In his decision, the ALJ afforded partial weight to the March 15, 2018, medical opinion of Dr. Long who opined that:

> [Rivera] can sit for less than two hours in an eight-hour workday; stand and/or walk for less than two hours in an eight-hour workday; rarely lift less than 10 pounds; never lift 10 pounds; rarely climb stairs; never twist, stoop, crouch or squat, or climb ladders; use his right to grasp, turn, and twist objects; right finger fine manipulation; and right arm for reaching for zero percent of an eight-hour workday.  He must use a cane when standing or walking; likely to have good days and bad days and likely to be absent for more than four days per month.

(Tr. 478-90).

In support of his assignment of partial weight to the medical opinion of the treating physician, the ALJ explained that the opinion was not entirely consistent with the evidence.  He further explained that he gave more weight to the portion of the opinion where it relates to Rivera's inability to climb ladders and his need of a cane when standing and walking. (Tr. 480-81).

He explained that the evidence of record showed that upon examination of Rivera's bilateral knees, he had tenderness of the medial

aspect of the patellae, and he had pain with resisted extension of the patellae. (Tr. 27).  The ALJ gave less weight to the portion of the opinion relating to the examination of the right hand that showed Rivera had:

> decreased range of motion of the right thumb and tenderness on palpation of the proximal phalange of the right thumb and the MCP joint.  Rivera had normal arterial flushing and normal sensory examination of the right thumb. He had 4/5 strength of all musculature of the bilateral lower extremities.

(Tr. 28).

Rivera points to a supportive diagnostic study in March 2013 which revealed a small central disc protrusion at the L5-S1 level with mild bilateral neural foraminal stenosis; mild disc desiccation at the L5-S1 level; mild bilateral facet arthropathy at the L4-L5 level; and a small central disc protrusion at the L5-S1 level, with bilateral facet arthropathy and mild bilateral neural foraminal stenosis.  (Tr. 306).

Ultimately, the ALJ found Rivera's physical impairments were not as limiting as Dr. Long opined.  (Tr. 28).  We find that the ALJ supported his reasoning in assigning partial weight to Dr. Long's opinion.

Rivera contends that the ALJ should have requested a clarification from Dr. Long if he felt his opinion was unclear.  Although the ALJ has the duty to assist a claimant in developing a full and fair record, *Ventura,*

55 F.3d at 902, she is not required to "search out relevant evidence which might be available, since that would in effect shift the burden of proof to the government." Rather, the ALJ's duty is to ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts or ambiguities in the evidence. Furthermore, because Rivera was represented by counsel at the administrative level, the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).

In *Iturralde v. Berryhill*, No. 3:16-CV-01597, 2018 WL 1465273, (M.D. Pa. Mar. 1, 2018), *report and recommendation adopted*, 2018 WL 1453181 (M.D. Pa. Mar. 23, 2018), where the claimant asserted that the ALJ was required to contact the claimant's doctor if the ALJ had questions about the medical opinion, the Court stated that "it is within the ALJ's discretion to decide whether he needed explanation from [the doctor] in order to make his decision." *Id.* at *6; *see also Williams v. Astrue*, No. 10-CV-499S, 2012 WL 1114052, at *3 (W.D.N.Y. Mar. 30, 2012) (explaining that "[t]he duty to recontact arises only where an ALJ lacks sufficient evidence to evaluate opinion evidence or make a disability

determination"). Additionally, the Court in *Iturralde* found "that the ALJ did not err in deciding not to contact [the doctor]" or in allocating little weight to the doctor's opinion because the ALJ "explained and supported his reasoning in according [the doctor's] opinion little weight with substantial evidence in the record." *Iturralde*, 2018 WL 1465273, at *6.

In this case, the medical records along with Rivera's testimony provided the ALJ sufficient evidence to make a disability determination and he did not need to recontact Dr. Long. The ALJ adequately explained and provided support for his reasons for the weight given to the medical opinion of Dr. Long. Therefore, the court finds that the ALJ was not required to recontact Dr. Long.

### b. The ALJ's symptom evaluation is supported by substantial evidence.

Rivera argues that the ALJ's symptom evaluation violates Social Security Ruling 16-3p, which states that the ALJ will consider the consistency of the claimant's allegations with the medical and other evidence, but does not mandate that the claimant's allegations be completely consistent with the record. (Doc. 13, at 10).

The Commissioner's regulations explain how an ALJ evaluates a claimant's testimony regarding how symptoms affect the ability to work:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

Standing alone, a claimant's allegation of a symptom is not enough to establish an impairment or disability. 20 C.F.R. § 404.1529(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain"). An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so. *Prokopick*, 272 Fed. App'x at 199

(citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999), and Soc. Sec. Ruling 96–7p, 1996 WL 374186).

When evaluating a claimant's subjective allegations, the ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2016 WL 119029. First, the ALJ must determine whether there is a medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). An individual will not be found to be "disabled based on alleged symptoms alone." *See* Soc. Sec. Ruling 16-3p, 2016 WL 119029, at *4 (explaining that "[i]f there is no medically determinable impairment, or if there is a medically determinable impairment, but the impairment(s) could not reasonably be expected to produce the individual's symptoms" those symptoms will not be found to affect the claimant's "ability to perform work-related activities").

Once the ALJ has found that a medically determinable impairment is established, the ALJ then evaluates the claimant's allegations about the intensity, persistence, or functionally limiting effects of her symptoms against the evidence of record. Soc. Sec. Ruling 16-3p, 2016

WL 1119029, at *4. This evaluation requires the ALJ to "examine the entire record, including the objective medical evidence," the plaintiff's testimony, and any other relevant evidence. (*Id.*)  On March 28, 2016, Social Security Ruling 96-7p, which provided guidance on assessing the credibility of a claimant's subjective symptoms, was rescinded and superseded by Social Security Ruling 16-3p, which instructs adjudicators when "determining whether an individual is disabled" to "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Soc. Sec. Ruling 16-3p, 2016 WL 119029, at *2.

Here, the ALJ found that Rivera's claim of impairments was not fully supported by the objective evidence of record. The ALJ pointed to the Rivera's testimony where he preferred not to drive due to his hand, but at a consultative examination, he reported that he drives.  (Tr. 356). Rivera testified that he has side effects from his medications but reported to his treatment providers that his medication helped and that he has no side effects.  (Tr.  316,324,333,339).

The ALJ noted that, on his disability form, Rivera alleged back pain, bilateral knee pain, and right-hand pain. (Tr. 156). Rivera testified that he cannot bend over and touch his toes; does not climb ladders or stairs; he can walk half a block; stand 25 to 30 minutes; he has to shift after sitting 30 minutes; he naps 3-4 times a day; takes medications as prescribed; has side effects from medications; he wears a brace on his right hand; prefers not to drive; he has constant pain in his knee and back; he only sleeps for three to four hours per night due to pain; and he uses a doctor recommended cane for standing and walking. (Tr. 25).

The ALJ pointed to Rivera's treatment records at Lebanon VA Medical Center which support severe impairments of tenosynovitis of the right hand and wrist, degenerative disc disease of the lumbar spine, chondromalacia patellae, and obesity. Rivera described the pain as dull with episodes of sharpness. He reported taking oxycodone at night and had no numbness in his legs. He reported that the medication helps, and he has no side effects from the medication. (Tr. 457). He reported knee pain and weakness and treated them with stretching exercises. (Tr. B4F/97). He reported using a cane. He was diagnosed with obesity on January 14, 2016. (Tr. 275).

The ALJ points to a physical examination dated July 14, 2016, of Rivera's bilateral knees where he had tenderness on palpating the medial aspect of the bile patella. The exam did not show any effusion and Rivera was negative for Lachman sign, drawer sign, and McMurray sign bilaterally.  He had no pain or stress of the right knee and had negative patellar apprehension sign.  (Tr. 320).  On exam, his right hand had decreased motion of the right thumb; tenderness on palpation of the right thumb and MCP joint; normal arterial flushing and normal sensory examination of the right thumb.  (Tr. 320).

Examinations from February 2017 through August 2017 show positive straight leg raise tests of the bilateral lower extremities in the sitting and supine positions; normal motor and sensory examination of the bilateral lower extremities.  (Tr. 442, 461).  Rivera's back appeared to be stable and the plan of treatment was medication management. Rivera's plan of treatment for his knees was medication management and exercises.  (Tr. 443,462).  At a September 26, 2017, examination Rivera reported having pain described as aching, throbbing, shooting, and sharp.  He reported the pain in his lower back with shooting pain stemming from the lower back down through the bilateral legs and feet.

In addition, the ALJ also considered Rivera's obesity in his decision. Social Security Ruling 02-1 requires that an ALJ consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and, finally, in determining the RFC. The ALJ considered Rivera's obesity at each stage of this analysis and it was used in determining Rivera's RFC limitations.   Even after considering his obesity, the ALJ felt that he was capable of light work.  (Tr. 24).

In this case, the ALJ evaluated all of the record evidence, along with his back pain, bilateral knee pain, and right hand and wrist pain.  (Tr. 24-25). The ALJ accommodated for Rivera's severe impairments and took into consideration the limitations and the effects each would have upon Rivera's functioning and tailored the restrictions to match what the current medical evidence and records have substantiated.

Here, we find that the ALJ's credibility findings regarding symptom evaluation are supported by substantial evidence.  Thus, we find no basis to disturb the ALJ's determination on this matter.

An appropriate Order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: September 15, 2020